**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Navajo Nation, *et al.*, | No. CV-19-08340-PCT-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| United States Department of the Interior, *et al.*, | |
| Defendants. | |

At issue is Defendants' Motion to Dismiss (Doc. 17, MTD), to which Plaintiffs Navajo Nation and Navajo Nation Gaming Enterprise (the "Enterprise") filed an Opposition (Doc. 21, Opp'n) and Defendants filed a Reply (Doc. 22, Reply). The Court finds the Motion appropriate for resolution without oral argument. *See* LRCiv 7.2(f). For the reasons that follow, the Court grants Defendants' Motion.

## I.    BACKGROUND

Navajo Nation is a federally recognized Indian tribe with its reservation located predominantly in northeastern Arizona. Navajo Nation created the Enterprise under its laws for the primary purpose of conducting gaming and related business activities. On August 16, 2010, the Enterprise purchased 435 acres of land just east of Flagstaff, Arizona, where it planned to construct what is now the Twin Arrows Casino Resort. That same day, to allow access to the casino from Interstate 40, the Enterprise entered into an easement agreement with Steven and Patsy Drye. The agreement expressly granted a perpetual nonexclusive right in a 500-foot easement over the Dryes' property to the Enterprise and the public. The

agreement further stated that the easement "shall run with the land" and be "governed" by Arizona law. (Doc. 17-1, MTD Ex. A, Easement Agreement ¶¶ 3, 4).[1] The Enterprise recorded its interest in the easement in the Coconino County Recorder's Office the same day, August 16, 2010. In February 2015, the Enterprise assigned its right, title, and interest in the easement to Navajo Nation, which subsequently recorded its interest in May 2015.

On June 11, 2012, the Hopi Tribe purchased land from the Dryes, including the land underlying the Enterprise's easement. The special warranty deed that conveyed the land to the Hopi Tribe ("Hopi Fee Deed") subjected the land to "matters of record in the Official Records of the Coconino County Recorder's Office." (Doc. 17-2, MTD Ex. B, Hopi Fee Deed at 1.) Additionally, the Hopi Fee Deed explicitly acknowledged the Enterprise's easement. (Hopi Fee Deed at 14.)

On August 22, 2012, the Hopi Tribe submitted a fee-to-trust application to the Western Regional Director of the Bureau of Indian Affairs ("BIA"), which is a federal agency within the Department of the Interior ("DOI"). The application requested that the BIA take the newly purchased land into trust for the benefit of the Hopi Tribe, pursuant to the Navajo Hopi Land Dispute Settlement Act of 1996. The application acknowledged the Enterprise's interest in the easement. (Doc. 1, Compl. ¶ 26.) On December 16, 2013, the Western Regional Director issued a Letter Decision approving the application. The Letter Decision provided that any notified parties shall have thirty days from "receipt" of the Letter Decision to appeal. (Compl. ¶ 27.) On December 19, 2013, the Western Regional Director published notice of the Letter Decision in the Arizona Daily Sun. (Compl. ¶ 29.) On or around January 19, 2014, he placed the Hopi property into trust pursuant to a special warranty deed ("Hopi Trust Deed") later recorded on April 25, 2014. (Compl. ¶ 30; Doc. 21-2, Opp'n Ex. 2., Hopi Trust Deed.) The Hopi Trust Deed makes no explicit mention of the Enterprise's (or now, Navajo Nation's) easement.

---

[1] Although the Court may consider evidence in resolving a Rule 12(b)(1) motion, the Court would also take judicial notice of the documents the parties provided in their briefs, namely, the Easement Agreement, the Hopi Fee Deed, and the Hopi Trust Deed. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

In May 2015, the Hopi Tribe "asserted that it had jurisdiction" over the easement, and the Enterprise disagreed. (Compl. ¶ 31.) Unable to resolve the disagreement with the Hopi Tribe, Navajo Nation submitted a Freedom of Information Act request to the BIA in March 2016 seeking a number of documents related to the Letter Decision that approved the Hopi Tribe's fee-to-trust application. On July 26, 2016, the BIA responded by providing a portion of the application along with the Letter Decision. Believing that this receipt of the Letter Decision started the clock on the thirty days to appeal, Navajo Nation filed a Notice of Appeal with the Internal Board of Indian Appeals ("IBIA") on August 25, 2016, seeking reversal of the Letter Decision. On May 7, 2019, the IBIA dismissed Navajo Nation's appeal as untimely and for lack of jurisdiction.

On December 13, 2019, Navajo Nation and the Enterprise filed this suit against the DOI; the BIA; the IBIA; David Bernhardt, in his official capacity as the United States Secretary of the Interior; Tara Katuk Mac Lean Sweeney, in her official capacity as the Assistant Secretary of the Interior for Indian Affairs; and Allen Anspach, in his official capacity as the Acting Western Regional Director of the Bureau of Indian Affairs, alleging that they violated procedural due process and the Administrative Procedures Act. Specifically, Plaintiffs claim that Defendants misapplied 25 CFR § 151.12(d)(2)(ii)(A), a regulation that requires BIA officials to provide written notice of approved decisions to interested parties who made themselves known in writing. Plaintiffs allege that they suffered procedural harms because, despite having actual knowledge of the Enterprise's recorded property interest in the easement, the Western Regional Director did not provide actual written notice of the Letter Decision to the Enterprise at the time he issued the Letter Decision or within a reasonable time thereafter, and the IBIA dismissed Plaintiffs' appeal. (Compl. ¶¶ 28, 36.) Defendants now move to dismiss this suit under Rule 12(b)(1), contending that Plaintiffs have failed to allege facts sufficient to establish Article III standing—and thus, this Court's subject matter jurisdiction. (MTD at 8.)[2]

---

[2] Defendants also move to dismiss under Rule 12(b)(6), but the Court will resolve the Motion under Rule 12(b)(1).

## II.     LEGAL STANDARD

"A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). "Where the jurisdictional issue is separable from the merits of the case, the [court] may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill*, 594 F.2d at 733; *see also Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) ("With a 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction."). The burden of proof is on the party asserting jurisdiction to show that the court has subject matter jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).

## III.    ANALYSIS

To bring a justiciable lawsuit into federal court, Article III of the Constitution requires that a plaintiff have "the core component of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy Article III's standing requirements, the plaintiffs must show that they suffered a "concrete and particularized" injury that is "fairly traceable to the challenged action of the defendant," and that a favorable decision would likely redress the injury. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). In the complaint, the plaintiffs must "alleg[e] specific facts sufficient" to establish standing. *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002). If the plaintiffs fail to allege such facts, the Court should dismiss the complaint. *See, e.g., Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010). Here, Defendants challenge the first two prongs of the Article III inquiry, arguing that Plaintiffs have not shown that they suffered a concrete and particularized injury, nor have they shown that the alleged injury is fairly traceable to Defendants' actions. (MTD at 8.)

With regard to the first prong, allegations of a "bare procedural violation, divorced from any concrete harm," do not satisfy the requirements of Article III standing. *Spokeo, Inc. v. Robins* (*Spokeo I*), 136 S.Ct. 1540, 1549–50 (2016). However, the "violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Id.* at 1544. The Ninth Circuit determines whether there is sufficient injury in fact by asking: "(1) whether the statutory provisions at issue were established to protect [the plaintiffs'] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged . . . actually harm, or present a material risk of harm to, such interests." *Robins v. Spokeo, Inc.* (*Spokeo II*), 867 F.3d 1108, 1113 (9th Cir. 2017).

To support their position, Plaintiffs analogize this case to *Spokeo II*, in which the Ninth Circuit found that certain statutory violations created injury in fact. (Opp'n at 9.) In *Spokeo II*, the plaintiff alleged that the defendant published an inaccurate credit report about him in violation of the Fair Credit Reporting Act ("FCRA"). *Spokeo II*, 867 F.3d at 1110. The plaintiff contended that he had no need to allege any additional harm because the FCRA's purpose is to protect consumers' concrete interest in the accuracy of credit reporting, and thus the inaccurate credit report itself was a violation concrete enough to establish standing to sue. *Id.* at 1112. Applying its two-step approach, the Ninth Circuit agreed. Analyzing the first step, the court found that the FCRA procedures at issue were established to protect consumers' concrete interest in accurate credit reporting. *Id.* at 1115. It noted that inaccurate credit reporting "*can* itself constitute a concrete harm," and that the "real-world implications" of these harms seem "patent on their face." *Id.* at 1114. In analyzing the second step, the court found that the defendant's violations actually harmed, or created a "material risk of harm" to, the plaintiff's concrete interest because the misrepresentations made by the defendant were of the type that may be important to those making use of a consumer report. *Id.* at 1115, 1117. Thus, the court held that the plaintiff's complaint sufficiently alleged concrete injury. *Id.* at 1117.

In applying this test to the present case, however, the same cannot be said about Plaintiffs' allegations. First, unlike the plaintiff in *Spokeo II*, Plaintiffs here have not demonstrated that the regulations allegedly violated were implemented to protect concrete, and not purely procedural, interests. Plaintiffs state that the regulations regarding written notice to interested parties in 25 CFR § 151 "are designed to clarify competing property owners' legal rights and interests." (Opp'n at 9.) But denial of the mere clarification of property rights, without more, does not automatically "constitute a concrete harm"—the underlying property right is what it is—and thus the harm does not seem "patent on [its] face." *See Spokeo II*, 867 F.3d at 1114.

Even if Plaintiffs could establish that 25 CFR § 151 protects their concrete interests, they still do not satisfy second step of the Ninth Circuit test. Plaintiffs have not demonstrated that the alleged regulatory violations actually harmed, or created a material risk of harm to, Plaintiffs' concrete interest. Plaintiffs state that the 25 CFR § 151 regulations are intended to "protect the very concrete property interests" of interested parties. (Opp'n at 10.) They further allege that Defendants' violation "directly caused the deprivation of Plaintiffs' substantive property rights" and that it is the "ultimate deprivation of Plaintiffs' substantive property rights" that is the basis of this suit. (Opp'n at 8.) Plaintiffs go on to claim that their allegations of violations of 25 CFR § 151 "compounded with the real property rights at issue" are sufficient for standing purposes. (Opp'n at 11.) But implicit in Plaintiffs' arguments is the proposition that, while there is a concrete interest in Plaintiffs' real property rights, that interest is divorced from any procedural rights to notice and appeal. Because the concrete interest is in the property rights and not the rights to notice or appeal, to satisfy the second step of the test Plaintiffs must establish that there was harm, or a material risk of harm, to their property rights.

Plaintiffs have not sufficiently demonstrated any harm or risk of harm to their property rights. Both parties agree that Plaintiffs' rights in the easement were preserved in the transaction between the Dryes and the Hopi Tribe, which culminated in the Hopi Fee Deed. Nevertheless, Plaintiffs claim that their property rights were not preserved in the

transaction between the Hopi Tribe and the United States, which culminated in the Hopi Trust Deed. (Opp'n at 11–12.) Plaintiffs base their argument on the fact that, while the Hopi Fee Deed referenced the existence of the easement and Plaintiffs' rights in it, the Hopi Trust Deed made no such acknowledgment. Plaintiffs attempt to further this point by alleging that the Hopi Tribe subsequently "asserted that it had jurisdiction" over the easement (Compl. ¶ 31), and that Defendants' regulatory violations "allowed—and perhaps emboldened—the Hopi Tribe to assert jurisdiction." (Opp'n at 15.)

However, a lack of explicit reference to the easement alone is not sufficient to demonstrate that the Hopi Trust Deed extinguished any rights Plaintiffs had in the easement. Plaintiffs entered into an agreement with the Dryes that stated that the easement "shall run with the land" and be "governed" by Arizona law.[3] (Easement Agreement at ¶¶ 3, 4.) Plaintiffs have not established that their property interest in the easement was somehow extinguished or otherwise adversely affected, and the Hopi Tribe's mere "assert[ion]" of jurisdiction does not rise to the level of a recognizable legal harm. Furthermore, by Plaintiffs' own admission, Plaintiffs have a "*continuing interest* in a public road . . . overlaying [the] easement." (Doc. 1-2, Compl. Ex. 1 at 4 (emphasis added).) Thus, Plaintiffs do not satisfy the second step of the Ninth Circuit's test.

Because Plaintiffs have not demonstrated that the regulatory provisions at issue were designed to protect a concrete interest instead of a merely procedural one or that the alleged violations produced harm, or a material risk of harm, to their concrete interests, Plaintiffs have not produced sufficient allegations to establish injury in fact. Instead, Plaintiffs' allegations are what they cannot be for Article III purposes: allegations of a "bare procedural violation, divorced from any concrete harm." *See Spokeo I*, 136 S. Ct. at 1549–50.

Defendants have also challenged Plaintiffs' standing on the grounds that the alleged injury is not fairly traceable to Defendants' challenged actions. To establish standing,

---

[3] Arizona property law dictates that "[o]nce an easement is recorded, it runs with the land and burdens the servient estate's successors." *See, e.g.*, *Scalia v. Green*, 271 P.3d 479, 481 (Ariz. Ct. App. 2011).

1   Plaintiffs must demonstrate a "causal connection between the injury and the conduct

2   complained of." *Lujan*, 504 U.S. at 560. In other words, the injury may not result from "the

3   independent action of some third party not before the court." *Id.* (quoting *Simon v. E. Ky.*

4   *Welfare Rights Org.*, 426 U.S. 26, 42 (1976)).

5        Plaintiffs fail to meet this prong of the standing test for similar reasons as they fail

6   to meet the first. Plaintiffs allege that their injury—"the deprivation of their rights to fully

7   enjoy the Road Easement without interference from, or dispute with, the Hopi Tribe"—is

8   causally connected to the conduct complained of—"Defendants' failure to provide notice

9   to Plaintiffs of the Letter Decision." (Opp'n at 14.) Plaintiffs attempt to link the two by

10  claiming that Defendants' failure to provide notice "allowed—and perhaps emboldened—

11  the Hopi Tribe to assert jurisdiction" over the easement. (Opp'n at 15.) However, because

12  Plaintiffs have failed to demonstrate that Defendants' actions actually deprived Plaintiffs

13  of any property rights, it cannot be said that Defendants' actions "allowed . . . the Hopi

14  Tribe to assert jurisdiction." Instead, this assertion of jurisdiction—whatever that may have

15  actually been—was the "independent action of some third party not before the court." *See*

16  *Lujan*, 504 U.S. at 560. As recounted above, Plaintiffs have failed to allege a concrete and

17  particularized injury that is fairly traceable to Defendants' actions. Plaintiffs thus have not

18  established Article III standing to sue.

19        **IT IS THEREFORE ORDERED** granting Defendants' Motion to Dismiss

20  (Doc. 17) and dismissing this action for lack of subject matter jurisdiction.

21        **IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly

22  and close this case.

23        Dated this 23rd day of November, 2020.

24

25        _____
          Honorable John J. Tuchi
26        United States District Judge

27

28