WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Navajo Nation, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>United States Department of the Interior, *et al.*,<br><br>　　　　　Defendants. | No. CV-19-08340-PCT-JJT<br><br>**ORDER** |

At issue is Defendants' Motion for Partial Dismissal of Plaintiffs' First Amended Complaint (Doc. 35, MTD), to which Plaintiffs filed a Response (Doc. 38, Resp.) and Defendants filed a Reply (Doc. 41, Reply). The Court finds the Motion appropriate for resolution without oral argument. *See* LRCiv 7.2(f).

**I.    BACKGROUND**

According to the First Amended Complaint (Doc. 31, FAC)—the operative pleading—Plaintiff Navajo Nation is a federally recognized Indian tribe with its reservation located in Arizona, New Mexico, and Utah. Navajo Nation created Plaintiff Navajo Nation Gaming Enterprise ("the Enterprise") under its laws for the primary purpose of conducting gaming and related business activities. On August 16, 2010, the Enterprise purchased 435 acres of land just east of Flagstaff, Arizona, where it planned to construct what is now the Twin Arrows Casino Resort. The same day, to allow access to the casino from Interstate 40, the Enterprise entered into an easement agreement with Steven and Patsy Drye. The agreement expressly granted a perpetual nonexclusive right in a 500-foot easement over

the Dryes' property to the Enterprise and the public. (Doc. 31-1, FAC Ex. 1 at 20–81, Decl. of Easement Agreement; Doc. 17-1, Am. and Restated Decl. of Easement Agreement ("Am. Easement Agreement").)[1] The agreement further stated that the easement shall run with the land and be governed by Arizona law. (Am. Easement Agreement ¶¶ 3, 4). The Enterprise recorded its interest in the easement in the Coconino County Recorder's Office the same day, August 16, 2010. In February 2015, the Enterprise assigned its right, title, and interest in the easement to Navajo Nation, which recorded its interest in May 2015.

On June 11, 2012, the Hopi Tribe purchased land from the Dryes, including the land underlying the Enterprise's easement. The special warranty deed ("Hopi Fee Deed") conveyed the land "together with all improvements thereon and all of Grantor's interest in any easements . . . subject only to matters of record in the Official Records of the Coconino County Recorder's Office." (Doc. 31-4, FAC Ex. 4 at 3–12, Hopi Fee Deed at 1.) Additionally, the Hopi Fee Deed explicitly acknowledged the Enterprise's easement. (Hopi Fee Deed, Ex. A, Parcel No. 6.)

On August 22, 2012, the Hopi Tribe submitted a fee-to-trust application to Defendant Western Regional Director of the Bureau of Indian Affairs ("BIA"), which is a federal agency within Defendant United States Department of the Interior ("DOI"). The application requested that the BIA take the newly purchased land into trust for the benefit of the Hopi Tribe pursuant to the Navajo Hopi Land Dispute Settlement Act of 1996. The application acknowledged the Enterprise's interest in the easement. (FAC ¶ 30.) On December 16, 2013, the Western Regional Director issued a Letter Decision approving the application. The Letter Decision provided that any notified parties shall have thirty days from receipt of the Letter Decision to appeal. (FAC ¶ 33.) On December 19, 2013, the Western Regional Director published notice of the Letter Decision in the Arizona Daily Sun. (FAC ¶ 35.) On or around January 24, 2014, he placed the Hopi property into trust

---

[1] In its prior Order (Doc. 23), the Court took judicial notice of the documents the parties provided in their briefs submitted in conjunction with Defendants' first motion to dismiss, namely, the Amended Easement Agreement, the Hopi Fee Deed, and the Hopi Trust Deed. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

pursuant to a special warranty deed ("Hopi Trust Deed"), later recorded on April 25, 2014. (FAC ¶ 36; Doc. 21-2, Hopi Trust Deed.) The Hopi Trust Deed makes no explicit mention of the Enterprise's (or now, Navajo Nation's) easement.

In May 2015, the Hopi Tribe asserted it had jurisdiction over the easement land and that Hopi law prohibited the transport of alcohol over the easement; the Enterprise disagreed. (FAC ¶ 37.) After months of trying to resolve this disagreement, in January 2016, the Hopi Tribe's outside counsel proposed selling a permit to Navajo Nation to allow the transport of alcohol over the easement for an annual cost of one million dollars. (FAC ¶¶ 44, 45.)

Unable to resolve the disagreement with the Hopi Tribe, Navajo Nation submitted a Freedom of Information Act ("FOIA") request to the BIA on March 1, 2016, seeking documents related to the Letter Decision that approved the Hopi Tribe's fee-to-trust application. (FAC ¶ 54.) On May 26, 2016, counsel for Navajo Nation and the Enterprise met with DOI officials and requested that BIA provide a written opinion that the Hopi Tribe cannot assert jurisdiction over the easement, but BIA produced no such opinion. (FAC ¶ 55.) On July 26, 2016, the BIA responded to the FOIA request by providing a portion of the Hopi Tribe fee-to-trust application along with the Letter Decision. (FAC ¶ 56.) Believing that this receipt of the Letter Decision was the actual notice required to start the clock on the thirty days to appeal, Navajo Nation filed a Notice of Appeal with Defendant Internal Board of Indian Appeals ("IBIA") on August 25, 2016, seeking reversal of the Letter Decision. (FAC ¶ 57.) On May 7, 2019, the IBIA dismissed Navajo Nation's appeal as untimely and for lack of jurisdiction. (FAC ¶ 58.)

On December 13, 2019, Navajo Nation and the Enterprise filed this suit against the DOI; the BIA; the IBIA; the United States Secretary of the Interior (the "Secretary"); the Assistant Secretary of the Interior for Indian Affairs (the "Assistant Secretary"); and the Western Regional Director of BIA, alleging that they violated Plaintiffs' procedural due process rights and the Administrative Procedures Act. (Doc. 1, Compl.) In brief, Plaintiffs claim that Defendants misapplied 25 CFR § 151.12(d)(2)(ii)(A), a regulation that requires

BIA officials to provide written notice of approved decisions to interested parties who made themselves known in writing. Plaintiffs allege that they suffered harms when, despite having actual knowledge of the Enterprise's recorded property interest in the easement, the Western Regional Director did not provide written notice of the Letter Decision to the Enterprise at the time he issued the Letter Decision or within a reasonable time thereafter, and the IBIA dismissed Plaintiffs' appeal.

In an Order dated November 23, 2020, the Court granted Defendants' first motion to dismiss, finding that Plaintiffs failed to allege and provide facts sufficient to establish Article III standing and thus the Court's subject matter jurisdiction. (Doc. 23.) On appeal of that decision, the parties filed and the Ninth Circuit granted a joint motion to remand and joint stipulation to allow Plaintiffs to amend the Complaint to add new allegations not before this Court when it ruled on Defendants' first motion to dismiss. Plaintiffs filed the FAC on April 29, 2022, and Defendants now move to dismiss Plaintiffs' procedural due process claims (Counts 1, 3 and 5) under Federal Rule of Civil Procedure 12(b)(6).

**II.    LEGAL STANDARD**

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**III.  ANALYSIS**

Defendants request that the Court dismiss Plaintiffs' procedural due process claims—Counts 1, 3, and 5—for failure to state a claim. In Count 1, Plaintiffs contend that the Western Regional Director violated Plaintiffs' procedural due process rights when he failed to provide actual written notice to Plaintiffs, as required under 25 CFR part 151, of the Letter Decision approving the Hopi Tribe's fee-to-trust application when the Western Regional Director knew, by virtue of the recorded easement, that Plaintiffs were interested parties in the Letter Decision. In Count 3, Plaintiffs claim the IBIA's decision to uphold the Western Regional Director's decision not to provide actual written notice to Plaintiffs also violated their procedural due process rights. And in Count 5, Plaintiffs contend that if the Western Regional Director and IBIA reasonably interpreted the relevant BIA regulation, 25 CFR § 151.12(d)(2)(ii)(A)–(B), then the regulation is facially unconstitutional because it deprives Plaintiffs and other interested parties of their due process rights of reasonable notice and an opportunity to be heard.

To more efficiently resolve disputes between Navajo Nation and the Hopi Tribe, the Navajo Hopi Land Dispute Settlement Act of 1996, P.L. 104-301, 110 Stat. 3649, provides

1  that the "Secretary is directed to take lands into trust under this Act expeditiously and
2  without undue delay." The related regulation at issue in this lawsuit, 25 CFR § 151.12(d),
3  provides that a decision to approve an application by a BIA official pursuant to delegated
4  authority is not a final agency action of the DOI "until administrative remedies are
5  exhausted . . . or until the time for filing a notice of appeal has expired and no administrative
6  appeal has been filed." Upon approving an application, the BIA official must "promptly
7  provide written notice of the decision and the right, if any, to file an administrative appeal
8  of such decision . . . by mail or personal delivery, to . . . [i]nterested parties who have made
9  themselves known, in writing, to the official prior to the decision being made." 25 CFR
10 § 151.12(d)(2)(ii).

11  To begin with, in the FAC, Plaintiffs have plausibly alleged they were interested
12 parties who made themselves known in writing to the Western Regional Director prior to
13 the Letter Decision by way of their recorded interest in the easement on the land in which
14 the Hopi Tribe then had a fee simple interest. Plaintiffs also plausibly allege facts showing
15 the Western Regional Director did not provide them with prompt (or any) written notice of
16 the Letter Decision under 25 CFR § 151.12(d)(2)(ii)(A)—a proposition the parties do not
17 so far dispute.

18  In their Motion to Dismiss, Defendants argue that Plaintiffs have not alleged
19 sufficient facts from which the Court can plausibly infer that Plaintiffs have suffered the
20 deprivation of a protected property interest on account of Defendants' actions, as required
21 to bring a procedural due process claim. Such a claim requires a plaintiff to show (1) the
22 existence of a property or liberty interest protected by the Constitution, (2) a deprivation
23 of the interest by government action, and (3) a lack of due process. *Shanks v. Dressel*, 540
24 F.3d 1082, 1090 (9th Cir. 2008).

25  Plaintiffs contend Defendants' actions deprived Plaintiffs of protected property
26 interests by way of the resulting inability to bring a state law quiet title action to enforce
27 Plaintiffs' interest in the easement, and a corresponding diminishment in the value of the
28 easement interest.

Plaintiffs' contention is premised on the general principle that property interests are enforced—and therefore exist—under state law. In Arizona, an easement holder may bring a quiet title action to determine and enforce its property rights in the easement. *E.g.*, *Boyd v. Atchison*, 4 P.2d 670 (Ariz. 1931). A fee-to-trust conversion of tribal property such as the one the Western Regional Director approved on behalf of the Hopi Tribe acts to take property held by a tribe in fee simple and place it into the United States' trust for the benefit of the tribe. The effect of that conversion arises from the fact that, although an action may generally be brought against the United States to adjudicate interests in real property, federal law bars a quiet title action against the United States if the action applies to "trust or restricted Indian lands." 28 U.S.C. § 2409a(a) ("Quiet Title Act"); *see Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 216 (2012) (noting the exception to the United States' waiver of sovereign immunity with regard to quiet title actions concerning Indian lands). So, as Plaintiffs argue, the Western Regional Director's approval of the Hopi Tribe's fee-to-trust application (without notice to Plaintiffs) was in and of itself a change in Plaintiffs' property rights by way of Plaintiffs' resulting inability to enforce their interest in the easement against the United States by way of a quiet title action or otherwise. *Cf. Tulsa Professional Collection Servs., Inc. v. Pope*, 485 U.S. 478, 485 (1988) (stating that where a state action deprives a party of a cause of action, the cause of action is itself a property interest, albeit intangible, protected by the Fourteenth Amendment's due process clause).

The deprivation Plaintiffs claim was made concrete by the Hopi Tribe's alleged assertion of jurisdiction over the land to which the easement rights apply in the form of a prohibition on the transportation of alcohol over that land under Hopi law. *See Alaska v. Native Vill. of Venetie Tribal Gov't*, 522 U.S. 520, 523 (1998) (stating that land owned in fee simple is not "Indian country" subject to tribal jurisdiction); *Citizens Against Casino Gambling in Erie Cnty. v. Chaudhuri*, 802 F.3d 267, 285 (2d Cir. 2015) (stating "lands that pass from fee to trust . . . status are subject to tribal jurisdiction"). Without the ability for Plaintiffs to bring a quiet title action for a determination that Arizona law applies to the

easement, Hopi law may constructively apply to the land—whether legally correct or not with respect to the easement—and Plaintiffs are deprived of at least one property interest by way of the inability to transport alcohol over the easement to their casino. As Plaintiffs argue, "[t]he deprivation of the ability to *enforce* an easement is the equivalent of depriving the easement holder of the ability to use the easement; the 'easement' becomes null and the easement holder is subject to the cooperative whim of the servient estate." (Resp. at 8 (citing Thomas W. Merrill, *Property and the Right to Exclude*, 77 Neb. L. R. 730, 733 (1998)).) Defendants cannot credibly argue that their own actions converting the subject land from fee-to-trust on behalf of the Hopi Tribe without notice to Plaintiffs could not constitute a property right deprivation for Plaintiffs when it was that conversion that allowed the Hopi Tribe to assert jurisdiction over the easement to prohibit Plaintiffs from transporting alcohol on it and simultaneously prevented Plaintiffs from bringing a quiet title action by way of Defendants' own assertion of sovereign immunity.

Defendants argue that Plaintiffs "have no legitimate claim of entitlement to a quiet title action under federal law" and that when a law, such as the Quiet Title Act, "'creates a substantive rule of law granting immunity to certain parties against certain types of claims . . . the legislative determination provides all the process that is due.'" (Reply at 6 (quoting *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1142 (9th Cir. 2009)).) Here, Defendants miss the point. Plaintiffs neither claim entitlement to a quiet title action under federal law nor challenge the United States' sovereign immunity to suit in quiet title actions pertaining to "trust or Indian lands" under 28 U.S.C. § 2409a(a). Instead, Plaintiffs challenge Defendants' conversion of the property interests from fee simple to trust on behalf of the Hopi Tribe without notice to Plaintiffs or the opportunity for Plaintiffs to petition to exclude their easement rights from the trust lands such that their property rights would remain intact and their ability to bring a quiet title action under state law would be preserved.

Defendants also argue that "the procedures about which Plaintiffs complain—Defendants' failure to provide actual notice of the Letter Decision—do not relate to the right asserted." (Reply at 3.) The Court again disagrees. Plaintiffs have satisfactorily

alleged the link between their inability to timely appeal the Letter Decision and the DOI action taking the subject land into trust on behalf of the Hopi Tribe, thereby depriving Plaintiffs of a mechanism to enforce their rights in the easement. Specifically, Plaintiffs contend that, had they received notice and timely appealed the Letter Decision, they would have sought exclusion of the easement from the trust acquisition by way of assertion of their property interests in the easement. (*E.g.*, Resp. at 7.)

Relatedly, Plaintiffs claim that the property value of their easement interest decreased when their ability to enforce it disappeared with Defendants' fee-to-trust conversion on behalf of the Hopi Tribe; for example, Plaintiffs argue the easement is less valuable if they cannot enforce their rights to transport alcohol on it. (Resp. at 9–11 (citing, *e.g.*, Scott D. Anderson, *A Right Without a Remedy: The Unenforceable Procedure Patent*, 3 Marq. Intell. Prop. L. Rev. 117, 144 (1999) for the principle that a patent "retains its value only so long as it can be enforced" and "the patentee has effectively lost all economic value of his property right" when the patent cannot be enforced).) Defendants argue that any economic harm to Plaintiffs arises from actions of the Hopi Tribe, not Defendants. (Reply at 9.) But, as the Court discussed above, it was Defendants' fee-to-trust conversion of the Hopi Tribe property interest that deprived Plaintiffs of the cause of action to enforce their property rights and allowed the Hopi Tribe to assert jurisdiction over the land. Plaintiffs' claim of economic harm to value of their easement resulting from Defendants' actions is simply an extension of that deprivation of Plaintiffs' property rights.

In sum, the Court finds Plaintiffs have sufficiently alleged that Defendants' acts deprived Plaintiffs of property interests protected by the Constitution without sufficient due process. As a result, the Court declines to dismiss Plaintiffs' procedural due process claims (Counts 1, 3, and 5).

**IT IS THEREFORE ORDERED** denying Defendants' Motion for Partial Dismissal of Plaintiffs' First Amended Complaint (Doc. 35).

**IT IS FURTHER ORDERED** that Defendants shall file an answer to the First Amended Complaint (Doc. 31) within the time specified in the Federal Rules of Civil Procedure. The Court will set a case management conference by separate Order.

Dated this 10th day of January, 2023.

Honorable John J. Tuchi
United States District Judge