**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Navajo Nation, *et al.*, | No. CV-19-08340-PCT-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| United States Department of the Interior, *et al.*, | |
| Defendants. | |

At issue is the Hopi Tribe's Motion to Intervene for Limited Purpose (Doc. 63, Mot.), to which Plaintiffs Navajo Nation and Navajo Nation Gaming Enterprise (collectively, "Navajo") filed a Response in Opposition (Doc. 73, Resp.), Defendants filed a Response taking no position on the Motion (Doc. 72), the Hopi Tribe filed a Reply (Doc. 75, Reply), Navajo filed a Sur-Reply with leave of Court (Doc. 79, Navajo Sur-Reply), and the Hopi Tribe filed a Sur-Reply with leave of Court (Doc. 81-1, Hopi Sur-Reply). The Court finds this matter appropriate for resolution without oral argument. *See* LRCiv 7.2(f).

## I.     BACKGROUND

### A.     Factual Background

According to the First Amended Complaint (Doc. 31, FAC)—the operative pleading—Plaintiff Navajo Nation is a federally recognized Indian tribe with its reservation located in Arizona, New Mexico, and Utah. Navajo Nation created Plaintiff Navajo Nation Gaming Enterprise ("the Enterprise") under its laws for the primary purpose of conducting gaming and related business activities. On August 16, 2010, the Enterprise purchased 435

1    acres of land just east of Flagstaff, Arizona, where it planned to construct what is now the
2    Twin Arrows Casino Resort. The same day, to allow access to the casino from Interstate
3    40, the Enterprise entered into an easement agreement with Steven and Patsy Drye. The
4    agreement expressly granted a perpetual nonexclusive right in a 500-foot easement over
5    the Dryes' property to the Enterprise and the public. (Doc. 31-1, FAC Ex. 1 at 20–81, Decl.
6    of Easement Agreement; Doc. 17-1, Am. and Restated Decl. of Easement Agreement
7    ("Am. Easement Agreement").) [1] The agreement further stated that the easement shall run
8    with the land and be governed by Arizona law. (Am. Easement Agreement ¶¶ 3, 4). The
9    Enterprise recorded its interest in the easement in the Coconino County Recorder's Office
10   the same day, August 16, 2010. In February 2015, the Enterprise assigned its right, title,
11   and interest in the easement to Navajo Nation, which recorded its interest in May 2015.

12          On June 11, 2012, the Hopi Tribe purchased land from the Dryes, including the land
13   underlying the Enterprise's easement. The special warranty deed ("Hopi Fee Deed")
14   conveyed the land "together with all improvements thereon and all of Grantor's interest in
15   any easements . . . subject only to matters of record in the Official Records of the Coconino
16   County Recorder's Office." (Doc. 31-4, FAC Ex. 4 at 3–12, Hopi Fee Deed at 1.)
17   Additionally, the Hopi Fee Deed explicitly acknowledged the Enterprise's easement. (Hopi
18   Fee Deed, Ex. A, Parcel No. 6.)

19          On August 22, 2012, the Hopi Tribe submitted a fee-to-trust application to
20   Defendant Western Regional Director of the Bureau of Indian Affairs ("BIA"), which is a
21   federal agency within Defendant United States Department of the Interior ("DOI"). The
22   application requested that the BIA take the newly purchased land into trust for the benefit
23   of the Hopi Tribe pursuant to the Navajo Hopi Land Dispute Settlement Act of 1996. The
24   application acknowledged the Enterprise's interest in the easement. (FAC ¶ 30.) On
25   December 16, 2013, the Western Regional Director issued a Letter Decision approving the
26   application. The Letter Decision provided that any notified parties shall have thirty days

---

27   [1] In a prior Order (Doc. 23), the Court took judicial notice of the documents the
28   parties provided in their briefs submitted in conjunction with Defendants' first motion to
     dismiss, namely, the Amended Easement Agreement, the Hopi Fee Deed, and the Hopi
     Trust Deed. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

1   from receipt of the Letter Decision to appeal. (FAC ¶ 33.) On December 19, 2013, the

2   Western Regional Director published notice of the Letter Decision in the Arizona Daily

3   Sun. (FAC ¶ 35.) On or around January 24, 2014, he placed the Hopi property into trust

4   pursuant to a special warranty deed ("Hopi Trust Deed"), later recorded on April 25, 2014.

5   (FAC ¶ 36; Doc. 21-2, Hopi Trust Deed.) The Hopi Trust Deed makes no explicit mention

6   of the Enterprise's (or now, Navajo Nation's) easement.

7          In May 2015, the Hopi Tribe asserted it had jurisdiction over the easement land and

8   that Hopi law prohibited the transport of alcohol over the easement; the Enterprise disagreed.

9   (FAC ¶ 37.) After months of trying to resolve this disagreement, in January 2016, the Hopi

10  Tribe's outside counsel proposed selling a permit to Navajo Nation to allow the transport of

11  alcohol over the easement for an annual cost of one million dollars. (FAC ¶¶ 44, 45.)

12         Unable to resolve the disagreement with the Hopi Tribe, Navajo Nation submitted

13  a Freedom of Information Act ("FOIA") request to the BIA on March 1, 2016, seeking

14  documents related to the Letter Decision that approved the Hopi Tribe's fee-to-trust

15  application. (FAC ¶ 54.) On May 26, 2016, counsel for Navajo Nation and the Enterprise

16  met with DOI officials and requested that BIA provide a written opinion that the Hopi

17  Tribe cannot assert jurisdiction over the easement, but BIA produced no such opinion.

18  (FAC ¶ 55.) On July 26, 2016, the BIA responded to the FOIA request by providing a

19  portion of the Hopi Tribe fee-to-trust application along with the Letter Decision. (FAC

20  ¶ 56.) Construing this receipt of the Letter Decision as the actual notice required to start

21  the clock on the thirty days to appeal, Navajo Nation filed a Notice of Appeal with

22  Defendant Internal Board of Indian Appeals ("IBIA") on August 25, 2016, seeking reversal

23  of the Letter Decision. (FAC ¶ 57.) On May 7, 2019, the IBIA dismissed Navajo Nation's

24  appeal as untimely and for lack of jurisdiction. (FAC ¶ 58.)

25         On December 13, 2019, Navajo filed this suit against the DOI, the BIA, the IBIA,

26  the United States Secretary of the Interior, the Assistant Secretary of the Interior for Indian

27  Affairs, and the Western Regional Director of BIA, alleging that they violated Navajo's

28  procedural due process rights and the Administrative Procedure Act. (Doc. 1, Compl.) In

brief, Navajo claims that Defendants misapplied 25 CFR § 151.12(d)(2)(ii)(A), a regulation that requires BIA officials to provide written notice of approved decisions to interested parties who made themselves known in writing. Navajo alleges that it suffered harms when, despite having actual knowledge of the Enterprise's recorded property interest in the easement, the Western Regional Director did not provide written notice of the Letter Decision to the Enterprise at the time he issued the Letter Decision or within a reasonable time thereafter, and when the IBIA dismissed Navajo's appeal.

### B.    Procedural Background

In an Order dated November 23, 2020, the Court granted Defendants' first motion to dismiss, finding that Navajo failed to allege and provide facts sufficient to establish Article III standing and thus the Court's subject matter jurisdiction. (Doc. 23.) On appeal of that decision, the parties filed and the Ninth Circuit Court of Appeals granted a joint motion to remand and joint stipulation to allow Navajo to amend the Complaint to add new allegations not before this Court when it ruled on Defendants' first motion to dismiss. Navajo filed the FAC on April 29, 2022. (Doc. 31.)

Defendants moved to dismiss certain of Navajo's claims in the FAC, namely, the procedural due process claims (Counts 1, 3 and 5). On January 10, 2023, the Court denied the motion, finding Navajo "sufficiently alleged that Defendants' acts deprived [Navajo] of property interests protected by the Constitution without sufficient due process." (Doc. 42 at 9.) The Court held a case management conference on March 30, 2023, and set a discovery deadline of September 29, 2023, and a dispositive motion deadline of October 30, 2023. (Docs. 50, 51.) Defendants filed the Administrative Record on April 26, 2023. (Docs. 52–54.) On September 27, 2023—almost four years into this litigation—the Hopi Tribe filed the present Motion to Intervene.

## II.    LEGAL STANDARD

With regard to intervention as of right, Federal Rule of Civil Procedure 24(a) states,

> On timely motion, the court must permit anyone to intervene who . . . claims
> an interest relating to the property or transaction that is the subject of the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Accordingly, the Ninth Circuit outlines four requirements for intervention as of right under Rule 24(a)(2):

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010) (quoting *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006)). The movant's failure to satisfy any single one of these four factors is fatal to a motion to intervene under Rule 24(a)(2). *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

Rule 24(b)(1) governs permissive intervention. Under that rule, a movant must demonstrate: "'(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common.'" *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (quoting *United States v. City of L.A.*, 288 F.3d 391, 403 (9th Cir. 2002)). Even where those three elements are satisfied, however, the district court retains the discretion to deny permissive intervention. *Id.* (citing *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998)). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," Fed. R. Civ. P. 24(b)(3), and should consider whether the movant's interests are adequately represented by the existing parties and judicial economy favors intervention. *Venegas v. Skaggs*, 867 F.2d 527, 530–31 (9th Cir. 1998).

1    **III.    ANALYSIS**

2         The Hopi Tribe requests intervention as of right or permissive intervention under

3    Rule 24, and it has provided the Court with a proposed Motion to Dismiss under Rule 19,

4    in which it seeks to argue that it is an indispensable party in this case whose joinder is not

5    possible because it enjoys tribal sovereign immunity. (Doc. 63-2.) With regard to the first

6    element of either intervention as of right or permissive intervention, the Hopi Tribe argues

7    that its Motion is timely—even though it is four years into this litigation—because Navajo

8    sought a remedy in its July 28, 2023 damages disclosure for Defendants to "remove the

9    trust status of lands now held in trust for the Hopi Tribe." (Mot. at 10.)

10        To evaluate the timeliness of a motion to intervene, the Court is to consider three

11   factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the

12   prejudice to other parties; and (3) the reason for and length of the delay." *League of United*

13   *Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (internal quotation

14   omitted). The Hopi Tribe focuses its argument on the reason for the delay, contending that,

15   as a result of what it claims was a new request in Navajo's damages disclosure to

16   Defendants, "the Hopi Tribe has substantial property interests and sovereign interests in

17   the Hopi Property that would be impacted by [Navajo's] claims in this case," justifying

18   intervention. (Mot. at 10.) The Hopi Tribe thus argues that its September 27, 2023 motion

19   for intervention—filed two months after Navajo's damages disclosure—was timely.[2]

20   (Reply at 10 (stating the "material change in the relief requested by [Navajo] clearly

21   implicates the Hopi Tribe's fundamental interests in the trust status of its lands near Twin

22   Arrows in a way that was not present in the relief requested in [Navajo's] Complaint").)

23

24        [2] Navajo points out, and the Court agrees, that the Hopi Tribe's initial Rule 24
     timeliness argument lacked merit. In its initial brief, the Hopi Tribe argued that "[b]ecause
25   a Rule 19(b) defense can be raised at any time, including at trial and on appeal, and because
     the Hopi Tribe's Motion to Intervene is for the sole purpose of filing a motion to dismiss
26   based on Rule 19(b), the motion is timely." (Mot. at 6 (internal citations omitted).) That
     argument circumvented the requirement in Rule 24 that a motion to intervene be timely in
27   the context of the existing case, and none of the cases the Hopi Tribe cited allowed for the
     circumvention of Rule 24 simply because the proposed intervenor intended to file a Rule
28   19 motion to dismiss. (*See* Resp. at 7–9.) Circuit courts outside the Ninth Circuit have been
     more explicit on this point. *See, e.g.*, *Culbreath v. Dukakis*, 630 F.2d 15, 25 n.14 (1st Cir.
     1980) ("Rule 19 is not a route around the timeliness of intervention under Rule 24.")

In the FAC, filed on April 29, 2022, Navajo included allegations that

> the Easement pre-dated the Hopi fee-to-trust acquisition, so when the underlying land was taken into trust, it was already subject to the Easement, meaning the Easement and Road should not have become Hopi trust land. However, the Hopi Trust Deed did not acknowledge the Easement or state that the underlying land was being taken into trust subject to the Easement. The Hopi Trust Deed is incorrect and should be corrected to add language that the underlying land was acquired subject to easements and matters of record, including the Easement Agreement, and that placing the underlying land into trust does not alter existing tribal government jurisdiction over the Easement and the Road.

(FAC ¶ 50 n.12.)

In its damages disclosure to Defendants—which the Hopi Tribe argues first implicated its property interests and triggered its motion to intervene—Navajo stated that it "seek[s] that Defendants issue and record an amended deed of trust reflecting that the Road Easement is an exception not taken into trust for the Hopi Tribe and clarifying that the Hopi Tribe does not have jurisdiction over the Road Easement—or alternatively, that Defendants vacate the trust deed and return the subject property to fee status." (Doc. 63-3 at 9.) Navajo further stated, "Because Defendants did not follow the requirements for taking land into trust for the Hopi Tribe, the subject land must be returned to fee status until Defendants properly consider all jurisdictional conflicts and provide the Navajo Plaintiffs with the required notice an opportunity to be heard." (Doc. 63-3 at 10–11.)

In the course of the briefing on the present Motion, Navajo amended its damages disclosure to remove its request that the amended deed of trust state that the Road Easement is an exception not taken into trust and to remove its request that the property be returned to fee status. (Doc. 79-1 at 9–10.) Navajo clarified in the amended disclosure that it does "not seek to deprive the Hopi Tribe of having the subject property in trust status," but rather "seek[s] a result where the trust deed or any remedy ordered by the Court properly reflects the Navajo Plaintiffs' and the public's right to traverse the Road Easement consistent with the right to traverse that existed before the underlying land was taken into trust." (Doc. 79-1 at 10.) As a result of this amended damages disclosure, Navajo argues in its Sur-Reply that

the Hopi Tribe's argument for intervention fails because the Hopi Tribe "made clear in its Motion that it was intervening only to oppose [Navajo's] request to unwind the trust status of its Twin Arrows lands," which Navajo does not seek. (Navajo Sur-Reply at 3 (quoting Reply at 11).)

In its Sur-Reply, the Hopi Tribe contends that, even after Navajo sent the amended damages disclosure to Defendants, the Hopi Tribe "still has a protectable interest that will be practically impeded in this litigation," justifying intervention. (Hopi Sur-Reply at 1.) It argues the protectable interest arises because the "amended disclosure statement seeks to eliminate or curtail the Hopi Tribe's jurisdictional power over regulating easements on its trust property." (Hopi Sur-Reply at 1.)

But, as indicated above, that purported property interest on the part of the Hopi Tribe was explicitly identified at least as of the FAC, which Navajo filed on April 29, 2022. (*E.g.*, FAC ¶ 50 n.12 (alleging that the "Hopi Trust Deed is incorrect and should be corrected to add language that the underlying land was acquired subject to easements and matters of record, including the Easement Agreement, and that placing the underlying land into trust does not alter existing tribal government jurisdiction over the Easement and the Road").) And it was implicated far earlier. In the FAC, Navajo alleges it recorded its interest in the Road Easement in 2010, giving notice of it to the Hopi Tribe as well as BIA officials (FAC ¶ 74), and the Hopi Tribe acknowledged Navajo's interest in the Road Easement in 2012, when the Hopi Tribe filed its fee-to-trust application with the BIA's Western Regional Director (FAC ¶ 30). Navajo filed this lawsuit only after it discovered its easement interest was not included in the Hopi Trust Deed, in 2014 or 2015, and it lost its appeal to the IBIA, in 2019. The Hopi Tribe has been aware of Navajo's easement interest since the Hopi Tribe purchased the land in 2012, and constructively the Hopi Tribe's protectable property interest in this litigation arose as soon as Navajo filed the lawsuit in 2019. As a matter of timeliness, the Hopi Tribe's protectable property interest was not first triggered by Navajo's damages disclosure to Defendants in July 2023, as the Hopi Tribe argues. Therefore, the Hopi Tribe has failed to give a good reason for the delay in filing its Motion

1   to Intervene, and the length of the delay is since the inception of this lawsuit—

2   December 13, 2019. *See League of United Latin Am. Citizens*, 131 F.3d at 1302 (stating

3   that, in considering the timeliness factors, "we must bear in mind that any substantial lapse

4   of time weighs heavily against intervention" (internal quotation omitted)); *Stotts v.*

5   *Memphis Fire Dep't*, 679 F.2d 579, 583 (6th Cir. 1982) (affirming untimeliness finding

6   where interest of party moving for intervention was apparent at the outset of the litigation

7   but party took a "wait-and-see" approach that lasted three years).

8       Remaining for the Court to examine are the stage of the litigation and possible

9   prejudice to the parties. *See League of United Latin Am. Citizens*, 131 F.3d at 1302. When

10  the Hopi Tribe filed its Motion, the parties should have been well into discovery, (*see* Docs.

11  51, 58, 62), but the Court entered an Order (Doc. 65) staying discovery and the filing of

12  dispositive motions pending the ruling on the present Motion. Thus, this litigation is well

13  beyond its inception stage and, for other reasons causing delay, the case is now over four

14  years old. In that time, the parties and the Court have already seriously engaged in the

15  issues this litigation presents. (*See* Docs. 23, 42.) Further delay caused by the Hopi Tribe's

16  intervention is the primary source of prejudice to the parties, and particularly Navajo,

17  which has waited years to obtain resolution of an issue it discovered in 2014 or 2015.

18      All the relevant factors weigh against finding that the Hopi Tribe's Motion to

19  Intervene is timely. As a result, the Court must deny the Motion. *Nat'l Ass'n for*

20  *Advancement of Colored People v. New York*, 413 U.S. 345, 365 (1973) (holding that if a

21  motion to intervene "is untimely, intervention must be denied").

22      **IT IS THEREFORE ORDERED** denying the Hopi Tribe's Motion to Intervene

23  for Limited Purpose (Doc. 63).

24  . . . .

25  . . . .

26  . . . .

27  . . . .

28  . . . .

1       **IT IS FURTHER ORDERED** lifting any stay in place in this matter (*see* Doc. 65).

2   The parties shall file a joint proposed schedule for the remaining aspects of this case, to

3   include discovery and dispositive motion deadlines, by **July 12, 2024**.

4       Dated this 18th day of June, 2024.

5

6       Honorable John J. Tuchi
       United States District Judge